Wolff Dryer Company *v.* Casper S. Bigler, Trustees of the Estate of Sarah L. Bigler, deceased, Casper S. Bigler and James M. Rhoads, doing business as Samuel L. Bigler & Company, Appellants.

*Contracts—Modification of contract.*

Plaintiff granted to defendants the right to construct and use a machine for drying soft mud bricks, and agreed to sell them the parts of the machine and various appliances necessary for its use at a stated price. The buildings required were to be constructed by the defendants. After the machine was set up it was to be tested, and then accepted or rejected. If accepted, it was to remain the property of the plaintiff until paid for, with the right to remove it if payments were not made as provided by the agreement. If rejected, it was to be removed by the plaintiff at expense of the plaintiff, and all moneys which had been paid or notes which had been given were to be returned, the contract to be canceled, and neither party was to have any claim against the other. Before the machine was delivered the defendants wrote plaintiff inquiring whether it would guarantee that the machine would dry bricks made by the stiff mud process, without cracking them. Plaintiff replied, agreeing so to guarantee. The use of the machine for making stiff mud bricks did not require a change in the dryer, but required cars of a different kind and of a higher price. No other change was made in the agreement. The defendants used the dryer for several months, and when payment was demanded alleged a breach of warranty, and refused to either return the machine, or to pay for it. *Held,* that the only change in the contract was in substituting stiff mud for soft mud, and that the other provisions of the contract remained in force.

*Corporations—Foreign corporations—Filing statement under act of April 22, 1874.*

A foreign corporation which has no office or place of business in Pennsylvania, and no part of its capital invested here, may sell goods and make contracts by an agent coming into this state, and may ship the goods either directly from its factory in the state of its domicil, or upon its orders given to other manufacturers, and may sue for the price of such goods without filing the statement required by the Act of April 22, 1874, P. L. 108.

Argued May 29, 1899. Appeal, No. 4, May T., 1899, by defendants, from judgment of C. P. Dauphin Co., Sept. T., 1896, No. 292, on verdict for plaintiff. Before GREEN, MITCHELL DEAN and FELL, JJ. Affirmed.

Replevin to determine the ownership of certain brick drying machines.   Before SIMONTON, P. J.

At the trial it appeared that plaintiff was a corporation of the state of Illinois.   On January 31, 1895, A. F. Barron, agent of the plaintiff, made a contract with the defendants, by which the plaintiff granted to defendants the right to erect an "Iron Clad Brick Dryer," the buildings for which were to be built by defendants, according to plans and specifications of the plaintiff, and under the superintendence of a man furnished by it. Plaintiff was to furnish the equipment for the dry house, which it agreed to deliver f. o. b. Harrisburg, for $3,950, for which payment was to be made in either negotiable notes bearing interest, or cash, at the option of defendants.   The contract provided that the dryer thus erected should have a drying capacity of 40,000 standard size soft mud bricks per twenty-four hours; that a test of the same should be made upon the completion of the dry house, or within thirty days after the arrival of the cars and rails; and that, before the superintendent of the plaintiff should leave, he should be given a letter of acceptance, or, in the event that the test was unsatisfactory, a written statement to that effect, and that a failure to comply with such provision should be construed as an acceptance of the dryer.   In the event that the dryer failed to dry the quantity of bricks stated, plaintiff was to remove the materials at its own expense, and refund all moneys paid and return all notes given it, and the contract was to be considered as canceled, with neither party having any claim upon the other.   It also provided that the title to the possession of the dryer should remain in plaintiff until all notes and claims should be paid, and that it should have the right, upon failure to make any payment provided for, to remove the dryer, and retain all payments theretofore made.

The contract contained no warranty that the dryer would dry the bricks without cracking.

On March 2, 1895, plaintiff addressed the defendants the following letter:

"Your favor of the 1st inst., received and contents noted. You mention that should you conclude to put in an auger machine, if we will guarantee to dry brick made on this machine without cracking—our answer to this question is, yes.

"We note your remark that you expect to start building the

dryer on Monday, if this is the case, you no doubt want us to get out the material and ship it, so it will be there in time to put it in place when you are ready for it. Please give us shipping directions as early as possible, and oblige."

The letter of March 1 was not produced in evidence. The dryer was put up and apparently used by the defendants for several months without any notice to the plaintiff that it was unsatisfactory. Defendants alleged that the plaintiff by the letter of March 2 became a warrantor that the machine would dry bricks without cracking them. They charged a breach of warranty, and refused either to return the machine or to pay for it.

Defendants' point and the answer thereto among others were as follows:

2. The letter of the Wolff Dryer Company, dated March 2, 1895, having been accepted and acted upon by the defendants, is a contract of warranty which is inconsistent with, and, being later in date, annulled or at least modified the clause in the original agreement providing that the plaintiff might take out its property and retain all the consideration received for it; and if the jury find that the warranty to dry, without cracking, bricks made on an auger machine was not fulfilled, the plaintiff, not having tendered back the cash and notes received by it, cannot recover in this action; and the verdict must be for the defendants. *Answer:* This is refused. We think the effect of this letter was to substitute stiff mud for soft mud where the latter occurs in the original contract. [1]

The court gave binding instructions for plaintiff, reserving the question whether the omission of the plaintiff to file a statement under the act of April 22, 1874, defeated its right to maintain the action. [9]

Verdict for plaintiff for six cents damages and costs, upon which judgment was subsequently entered by the court.

*Errors assigned* were (1, 9) above instructions, quoting them; (10) in entering judgment for plaintiff on the reserved question.

*Lyman D. Gilbert,* with him *M. W. Jacobs* and *Frederick M. Ott,* for appellant.—The letter of March 2 contained a war-

ranty : Warren v. Philadelphia Coal Co., 83 Pa. 437; Brown
v. Piper, 91 U. S. 37; Douglass Axe Co. v. Gardner, 10 Cush. 88.

Plaintiff violated the act of April 22, 1874: Cooper Mfg.
Co. v. Ferguson, 113 U. S. 727; Lasher v. Stimson, 145 Pa.
30; Farrior v. New England Mortgage Security Co., 88 Ala.
275; Mearshon & Co. v. Lumber Co., 187 Pa. 12; Ry. Co. v.
Solan, 169 U. S. 133; Hennington v. Georgia, 163 U. S. 299;
Smith v. Alabama, 124 U. S. 465.

The effect of the act of 1874 to render the contract unenforce-
able is clearly shown in Lasher v. Stimson, 145 Pa. 30, Johnson
v. Hulings, 103 Pa. 498, Citizens' Trust & Surety Co. v. Mc-
Canna & Fraser Co., 6 Dist. Rep. 25, and Cooper Mfg. Co. v.
Ferguson, 113 U. S. 727.

*C. L. Bailey,* of *Wolfe & Bailey,* for appellee.—The contract
between the parties in this case, whereby the plaintiff was to
retain title to the materials sold to the defendants to equip the
dry house in the yards of the latter until they had been fully
paid for, was the usual one of conditional sale, and valid as
between the parties; Haak v. Linderman, 64 Pa. 501; Krause
v. Com., 93 Pa. 421; Brunswick & Balke Co. v. Hoover, 95
Pa. 508.

In the absence of any exceptional circumstances the plaintiff
had a right to retake its goods by replevin, upon nonpayment
of the notes given it: Hineman v. Matthews, 138 Pa. 204;
Collins v. Houston, 138 Pa. 481; Ferguson v. Rafferty, 128
Pa. 337; Cobbey on Replevin, sec. 246.

In thus bringing its action the plaintiff was not seeking at
the same time to retake its property and to confiscate the entire
price therefor, in the notes given and the money paid by the
defendants. On the contrary, with the exception of $125,
the entire price of the materials furnished by the plaintiff to
the defendants was represented by the defendants' own note,
not negotiated, and which were produced at the trial of the
case and placed unreservedly under the control of the court
where they now are. This was all that was necessary: Bush v.
Bender, 113 Pa. 94; Thurston v. Blanchard, 22 Pick. 18;
Poor v. Woodburn, 25 Vermont, 234; Durr v. Replogle, 167
Pa. 347; Tufts v. D'Arcambal, 12 L. R. A. (Mich.) 446.

Plaintiff had a right to maintain the action without having filed a statement under the act of April 22, 1874: McCall v. California, 136 U. S. 104; Mobile County v. Kimball, 102 U. S. 691; Gloucester Ferry Co. v. Pennsylvania, 114 U. S. 196; Blakeslee Mfg. Co. v. Hilton, 5 Pa. Superior Ct. 184; Mearshon & Co. v. Lumber Co., 187 Pa. 12; Commonwealth v. Simons, 3 Dist. Rep. 792; Commonwealth v. Mooney, 12 Lancaster Law Rev. 209; Commonwealth v. Walker, 12 Lancaster Law Rev. 210; Brennan v. Titusville, 153 U. S. 289; Standard Oil Co. v. Commonwealth, 101 Pa. 119; Wile & Breckner Co. v. Onsel, 10 Pa. C. C. R. 659; Cooper Mfg. Co. v. Ferguson, 113 U. S. 727; Commonwealth v. Bell Telephone Co., 129 Pa. 217; Kilgore v. Smith, 122 Pa. 48; Cæsar v. Capell, 83 Fed. Rep. 403; Southern Cotton Oil Co. v. Wemple, 44 Fed. Rep. 24, 26, 27; Toledo Commercial Co. v. Glen Mfg. Co., 5 Am. & Eng. Corp. Cas. (N. S.) 39; Coit & Co. v. Sutton, 102 Mich. 324; Miller v. Goodman, 7 Am. &. Eng. Corp. Cas. (N. S.) 177; Milling Co. v. Gorton, 26 L. R. A. 135; Cook v. Rome Brick Co., 98 Ala. 409; State v. Scott, 98 Tenn. 254; 36 L. R. A. 461; Ware v. Hamilton-Brown Shoe Co., 92 Ala. 145; Allen v. Buggy Co., 6 Am. & Eng. Corp. Cas. (N. S.) 670.

OPINION BY MR. JUSTICE FELL, July 19, 1899:

By the original contract between the parties the plaintiff granted to the defendants the right to construct and use a machine for drying bricks, and agreed to sell them the parts of the machine and numerous appliances necessary for its use at a stated price. The buildings required were to be constructed by the defendants. After the machine was set up it was to be tested, and then accepted or rejected. If accepted it was to remain the property of the plaintiff until paid for, with the right to remove it if payments were not made as provided by the agreement. If rejected it was to be removed by the plaintiff at its expense, and all moneys which had been paid or notes which had been given were to be returned, the contract to be canceled, and neither party was to have any claim against the other.

Before the machine was delivered the agreement was modified in this way: the defendants wrote to the plaintiff inquiring whether the machine would dry bricks made by the stiff mud

process without cracking them.   In the correspondence which followed the plaintiff wrote : " You mention that should you conclude to put in an Auger machine, if we will guarantee to dry bricks made on this machine without cracking—our answer to this question is, yes."

The use of the Auger machine did not require a change in the dryer, but it required cars of a different kind, and increased the price $456.   The defendants contended that the subsequent correspondence between the parties so modified the original agreement as to abrogate entirely the provisions for acceptance or rejection after test, and as to the right of the plaintiff to remove the machine if payment was not made as agreed, and that the plaintiff became a warrantor that the machine would dry bricks without cracking them.   Alleging a breach of warranty, they refused either to return the machine or to pay for it.

We see no reason to doubt the correctness of the construction given by the court to the original contract and the correspondence by which it was modified.   The change made by the parties went only to the extent of substituting stiff mud for soft mud in the original contract, and left all the other provisions of the contract in full force and effect.   It is apparent from the contract that both parties entertained a doubt as to whether the machine would dry bricks satisfactorily.   Provision was made for a test and for the removal of the machine if unsatisfactory, and each party was to bear its share of the expense of the experiment, and neither was to have a claim against the other.   The correspondence, read in connection with the agreement, does not indicate an intention to change the original contract except by the substitution of stiff mud.

The contention that the plaintiff could not maintain an action in this state, because it was a foreign corporation, and had not complied with the provisions of the Act of April 22, 1874, P. L. 108, is without merit.   It had no office or place of business in Pennsylvania, and no part of its capital was here.   The machinery sold was shipped either directly from its factory in Chicago, or upon its orders given to other manufacturers.   The fact that its agent came into this state and made contracts for machinery to be delivered here did not bring it within the inhibition of the act of 1874 : Mearshon & Co. v. Lumber Co., 187 Pa. 12.

The judgment is affirmed.