## Stoner v. Phillipi, Appellant.

*Corporations — Foreign corporations — Contract — Doing business — Registration — Individual liability.*

1. Where the officers of a foreign corporation enter into a contract in Pennsylvania for the purchase of a machine to be manufactured, and the corporation is registered a few days after the contract was made, and long before the machine was completed and delivered, and it appears that the company had done no other business in Pennsylvania and that the manufacturers knew that the persons with whom they dealt represented the corporation, the officers making the contract cannot be held individually liable for the price of the machine.

2. Isolated transactions, commercial or otherwise, taking place between a foreign corporation domiciled in one state and a citizen of another state are not a doing or carrying on of business by the foreign corporation within the latter state.

Argued April 30, 1909. Appeal, No. 48, April T., 1909, by defendants, from judgment of C. P. No. 4, Allegheny Co., Third Term 1907, No. 668, on verdict for plaintiffs in case of E. C. Stoner and Josiah C. Thaw, doing business as Stoner, Thaw &.

Company, Limited, v. B. N. Phillipi, Marshall Henderson and
E. L. Sohns. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Assumpsit to recover the price of a machine. Before SWEARINGEN, P. J.

The facts appear by the opinion of the Superior Court.

The court charged in part as follows:

[The defense as to the making of the contract consists in this:
The defendants introduced testimony to show that a corporation was organized, of which these three defendants were stockholders and directors; and that that corporation was organized under the laws of the state of New Jersey, which, for the purpose of the laws of Pennsylvania, is a foreign corporation. The corporation was started some time in the month of April. According to the testimony of the defendants, Mr. Sohns was authorized to make a contract for the building of a machine of this character, and that all his negotiations with the plaintiff and that all the negotiation of the defendants with the plaintiff were in pursuance of that arrangement. In other words, that he was acting and that they were acting at the instance of this corporation, known as the Pittsburg Refreshment Machine Company. And evidence is further introduced, on behalf of defendants, that the corporation was registered in the office of the secretary of the commonwealth of Pennsylvania on June 15, 1906. Now, gentlemen, we have a statute in Pennsylvania which requires that a foreign corporation shall not do business in Pennsylvania until it shall have established an office or offices, and appointed an agent for the transaction of its business in this state; and, that it shall not be lawful for a corporation to do business in this commonwealth until it shall have filed in the office of the secretary of the commonwealth, articles of incorporation, which means the registration of the corporation. So that, under the facts as developed here, the evidence submitted on the part of the defendants themselves, it becomes my duty to say to you that the defense that this contract was made with this corporation

is not made out. This corporation, the Pittsburg Refreshment Machine Company, being a corporation of New Jersey, and not having registered in the office of the secretary of the commonwealth of Pennsylvania until June 15, and it being admitted that the contract was made prior to that date, then, I say to you, that the corporation had no authority to do business in the state of Pennsylvania. And if these defendants were acting for that corporation in making a contract prior to that time, then they became responsible in this regard for the contract. That is the law, as we understand it, and if we have made a mistake in our interpretation of the law, there is a method of correcting it.] [7]

[So that, you will then, gentlemen, under the instructions of the court, find a verdict for the plaintiff if you believe the testimony of the plaintiff that the contract was made prior to June 15, 1906, and according to the testimony of Mr. Sohns, one of the defendants, that is the fact.] [8]

Plaintiff presented these points:

1. That if the jury find from the evidence that the machine delivered by the plaintiff was in accordance with the order of defendants and that the price charged therefor was a fair and reasonable market price at the time of delivery, the plaintiffs are entitled to recover against any of the defendants who ordered said machine, either individually or as agents or representatives of the Pittsburg Refreshment Machine Company prior to June 15, 1906. *Answer:* Affirmed. [1]

2. If the defendants, or any of them, acted as agents or representatives of the Pittsburg Refreshment Machine Company, and as such agents or representatives, ordered the machine in question from the plaintiffs, they are individually liable to plaintiffs for the value thereof, if such order was given prior to June 15, 1906. *Answer:* Affirmed. [2]

Defendant presented these points:

1. That if you find that the defendants were members, incorporators, stockholders and directors of the Pittsburg Refreshment Machine Company and that the Pittsburg Refreshment Machine Company made the contract with the plaintiff for the construction of the machine furnished by the plaintiff,

and that the plaintiff knew that said Pittsburg Refreshment Machine Company was a corporation, then you will find a verdict for the defendants. *Answer:* Refused. [3]

2. If you find that the plaintiff manufactured the machine in question for the Pittsburg Refreshment Machine Company and gave credit to the Pittsburg Refreshment Machine Company knowing that it was a corporation, then you will find a verdict for the defendants. *Answer:* Refused. [4]

3. If you find that the original contract was made with E. L. Sohns, acting as the agent of the Pittsburg Refreshment Machine Company, by the plaintiff, and delivered to them after they had registered as a corporation in this state, then you will find a verdict for the defendants. *Answer:* Refused. [5]

4. That under all the evidence you will find a verdict for the defendants. *Answer:* Refused. [6]

Verdict and judgment for plaintiff for $253.70. Defendants appealed.

*Errors assigned* were (1–8) above instructions, quoting them.

*H. Fred Mercer*, for appellants.—Having dealt with the corporation as a corporation, and knowing that it was a corporation, the plaintiff cannot impeach its charter or its contractual ability: Johnston v. Elizabeth Building & Loan Assn., 104 Pa. 394; Spahr v. Farmers' Bank, 94 Pa. 429; Bond v. Stoughton, 26 Pa. Superior Ct. 483; Stephenson v. Dodson, 36 Pa. Superior Ct. 343.

*W. W. Stoner*, with him *M. W. Stoner*, for appellee, cited: Lasher v. Stimson, 145 Pa. 30.

Opinion by Rice, P. J., October 11, 1909:

Judging from the plaintiffs' statement of claim this action of assumpsit was brought to recover the price of a machine manufactured by the plaintiffs for the defendants in accordance with a plan agreed upon by the parties, and duly delivered to and accepted by the defendants. Evidently anticipating the defense that would be set up, the plaintiffs further alleged in their statement, "that no corporation was ever spoken of, or men-

tioned to it as the purchaser or party to the contract of sale; that it relied entirely upon the individual responsibility of the three defendants herein named and that it was induced to manufacture the article sold and to make the sale by favorable reports of the defendants' financial condition upon inquiry being made."

The main defense set up in the affidavit of defense and on the trial consisted of a denial that the defendants dealt with the plaintiffs in their individual capacity either in ordering or accepting the machine, and an assertion that they dealt with them only as representatives of the Pittsburg Refreshment Machine Company, a New Jersey corporation, and that the plaintiffs were informed and well knew that they represented said corporation.

Each side of the plain issue of fact presented by the statement of claim and the affidavit of defense was supported by evidence, and if the case had been submitted to the jury with direction to render a verdict in favor of the plaintiffs or of the defendants according as they should determine the issue of fact, the defendants would have no just cause to complain of the charge of the court. It is claimed by the plaintiffs' counsel that the verdict was based solely upon the jury's determination of this issue of fact in their favor. It may have been so, but there is no way of determining that it was so. For, as shown by the court's affirmance of the plaintiffs' points quoted in the first and second assignments of error, the refusal of the defendants' points quoted in the third, fourth and fifth assignments, and the portions of the general charge quoted in the seventh and eighth assignments, the jury were instructed, in substance, that even though they should decide the above stated issue of fact in the defendants' favor, yet if they should find that the defendants were acting for a foreign corporation in making the contract, and that the date of making it was prior to June 15, 1906, the date of registration in this commonwealth, they were liable individually. In view of these instructions it becomes important to refer more particularly to the version of the transaction given by the defendants. The Pittsburg Refreshment Machine Company was incorporated under the laws of the state of New Jersey on

April 30, 1906, and was registered in Pennsylvania on June 15, 1906. The three defendants were among the incorporators, stockholders and directors. Sohns was the president, and Phillipi the secretary and treasurer. According to the defendants' evidence, Sohns was appointed by the board of directors as the company's agent to ascertain where such machines as the company desired could be made and to make a contract for one. He testified that he had several interviews with Mr. Stoner, who was acting for the plaintiff, and explained to him that the Pittsburg Refreshment Machine Company was a corporation organized for the purpose of putting such machines on the market, and that (without going into unnecessary recitals of the details testified to by him) he contracted with the plaintiffs to construct for the company the machine in question. The contract was made and the work was begun before June 15. But the machine was not completed until some time in July, when it was delivered to and put in use by the company's representative at an amusement park in Pittsburg. It is admitted by both parties that no price for the machine was agreed upon, but that it was to be built at regular shop rate for time and labor and ordinary charges for materials. The entry in the plaintiffs' order book of June 14, 1906, was of an order for a machine "as per instructions" for Pittsburg Refreshment Machine Company. The charges in the plaintiffs' books of account were entered in that name. The itemized bill for the work and materials, rendered after completion of the machine, had at its head "Pittsburg, July 16, '06. Sold to Pittsburg Refreshment Machine Company, City," and this was inclosed and forwarded in a letter addressed "Pittsburg, August 2, 1906, Pittsburg Refreshment Machine Co., D. M. Phillipi, Treasurer, City," and stating, "We enclose herewith bill for work on refreshment machine ordered by your company." The plaintiffs' explanation of this documentary evidence is that they were told by the defendants that they were going to call themselves the Pittsburg Refreshment Machine Company. In view of this explanation, the court would not have been warranted in charging the jury that the plaintiffs knew that the Pittsburg Refreshment Machine Company was a corporation, that Sohns and the

other defendants were acting in behalf of that corporation, and not as individuals or a firm, in ordering and accepting the machine, and that the plaintiffs made and delivered the machine upon the order and the credit of the company. But the jury, whose province it was to pass on the credibility of the witnesses, could have found all these facts. Therefore in determining as to the correctness of the instructions complained of in the assignments of error above referred to the case is to be considered as if they had found them.

Thus viewing the case, it differs in several material particulars from Lasher v. Stimson, 145 Pa. 30, upon which the appellees rely. In that case the corporation was carrying on in Pennsylvania the business of manufacturing and selling a certain article, and the contract was made in the course of that business. There is no evidence in the present case that the corporation was carrying on any business in Pennsylvania at or prior to the time the contract was made. It did not appear in that case that the corporation was ever registered in Pennsylvania. Here the corporation was registered within a few days after the order was given, and a considerable time before the work was completed, and the corporation was fully authorized to do business in Pennsylvania at the time the performance of the contract was consummated by delivery of the machine. In that case the plaintiff was not informed that the company was a corporation of the state of New Jersey, or that it was a corporation at all, while in the present case there was ample evidence that the plaintiffs knew, at least, that they were dealing with a corporation. In determining whether a conclusion of law in any adjudicated case is a precedent in a subsequent one, the value of the first, usually, is measured by its similarity or dissimilarity to the second in its controlling facts: Yoders v. Amwell Township, 172 Pa. 447. There is such dissimilarity between this case and Lasher v. Stimpson in respect to facts which are referred to in the opinion in the latter case as entering into the question for decision as makes it impossible to declare that it rules this case. Not every contract entered into in this commonwealth by a foreign corporation before compliance with the provisions of the act of 1874 involves "doing business" within

the prohibition of the act. For example, a corporation of one state may send its agents to another to solicit orders for its goods, or contract for the sale thereof, without conforming to the provisions of the act: Blakeslee Mfg. Co. v. Hilton, 5 Pa. Superior Ct. 184; Mearshon & Co. v. Pottsville Lumber Co., 187 Pa. 12; Wolff-Dryer Co. v. Bigler, 192 Pa. 466; New Jersey Steel Tube Co. v. Riehl, 9 Pa. Superior Ct. 220. This, it is true, was not a contract for the sale of goods but a contract for the purchase of a single article to be manufactured. But in Commonwealth v. Standard Oil Co., 101 Pa. 119, it was held that the purchase of crude oil in this state by a foreign corporation and the shipment thereof to other states to be refined did not constitute doing business within the meaning of our tax laws. This case is cited in People's Bldg., Loan & Sav. Association v. Berlin, 201 Pa. 1, as throwing light upon the legal scope of the words "doing business in this commonwealth" as used in the act of 1874. We call particular attention to the opinion of Justice PAXSON at p. 148, and of Judge SIMONTON at p. 132 of Commonwealth v. Standard Oil Co., 101 Pa. 119. The latter refers to the case of Missouri Furnace Co. v. Cochran, 12 Pitts. L. J. (N. S.) 238, where McKENNAN, circuit justice, held that purchasing materials here by a foreign corporation was not doing business in the state within the meaning of the act of April 22, 1874. Another point to be noticed is that this was an isolated transaction, and with regard to this subject it is said: "The general conclusion of the courts is that isolated transactions, commercial or otherwise, taking place between a foreign corporation domiciled in one state and a citizen of another state, are not a doing or carrying on of business by the foreign corporation within the latter state:" 19 Cyc. of Law & Pro., p. 1268. In support of this proposition a large number of authorities are cited, and amongst them the Pennsylvania case of Delaware River Quarry, etc., Co. v. Bethlehem, etc., Pass. Ry. Co., 204 Pa. 22, where Justice FELL said: "This act has been liberally construed, and isolated transactions between a foreign corporation and citizens of this state have been held not to come within its prohibition, and only such corporations as have entered this state by their agents and transacted their ordinary business

here, have been considered as 'doing business' in violation of the act." Bearing in mind that the corporation in the present case had not entered upon the transaction of business in this commonwealth at the time the contract was made and that before it did so it fully complied with the requirements of the act of 1874, we think it clear that the case comes within the principle thus recognized by the Supreme Court. Therefore it was error to charge that as the contract was made before the date of registration the defendants were liable individually. Indeed, it would have been proper to submit this branch of the case to the jury upon the single issue of fact stated at the outset of this opinion.

The judgment is reversed and a venire facias de novo awarded.